Mark Holscher (SBN 139582)
mark.holscher@kirkland.com
Jeff Sinek (SBN 135508)
jeff.sinek@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Nathan J. Hochman (SBN 139137)
MORGAN, LEWIS & BOCKIUS LLP
2049 Century Park East
Los Angeles, California 90067
Telephone: (310) 255-9025
Facsimile: (310) 907-2000

*Attorneys for Defendant*
*Eric Pulier*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:17-cr-00599-AB |
| Plaintiff, | **DEFENDANT ERIC PULIER'S REPLY IN SUPPORT OF MOTION FOR A BILL OF PARTICULARS** |
| v. | |
| ERIC PULIER and JON WALDRON, | **PUBLIC REDACTED VERSION** |
| Defendants. | Judge: André Birotte Jr. |
| | Hearing Date: June 15, 2018 |
| | Time: 1:30 p.m. |
| | Courtroom: 7B |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................... 1

II.   ARGUMENT ............................................................................................ 3

    A.    The Governing Legal Standard Supports Mr. Pulier's Request
        For a Bill of Particulars. ........................................................... 3

    B.    The Discovery Produced to Date and the Indictment Highlights
        Mr. Pulier's Need for a Bill of Particulars. ........................................ 4

    C.    Mr. Pulier Needs a Bill of Particulars to Understand the
        Government's Factual Theory Regarding How the Bribery
        Conspiracy was Furthered. ......................................................... 7

    D.    Mr. Pulier Needs a Bill of Particulars to Understand the
        Government's Factual Theory Regarding to Whom Mr. Pulier
        Offered or Paid Bribes. ........................................................... 14

III.  CONCLUSION ....................................................................................... 15

DEFENDANT PULIER'S REPLY IN SUPPORT OF MOTION FOR A BILL OF PARTICULARS

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States v. Ayers*,
  942 F.2d 1468 (9th Cir. 1991) ...................................................................... 3

*United States v Brown*,
  No. 2:17-cr-00047(A)-CAS, 2018 WL 739268 (C.D. Cal. Feb. 5,
  2018) ........................................................................................................ 11, 12

*United States v. Burt*,
  765 F.2d 1364 (9th Cir. 1985) .................................................................. 10, 11

*United States v. Chen*,
  No. C 05-375, 2006 WL 3898177 (N.D. Cal. Nov. 9, 2006) .............................. 7, 13

*United States v. DiCesare*,
  765 F.2d 890 (9th Cir. 1985) .................................................................. 10, 11

*United States v. Feil*,
  No. CR 09-00863 JSW, 2010 WL 1525263 (N.D. Cal. Apr. 15, 2010) ............ 8, 10

*United States v. Fernandez*,
  388 F.3d 1199 (9th Cir. 2004) ...................................................................... 14

*United States v. Giese*,
  597 F.2d 1170 (9th Cir. 1979) ...................................................................... 7, 13

*United States v. Nachamie*,
  91 F. Supp. 2d 565 (S.D.N.Y. 2000) ............................................................... 10

*United States v. Rajaratnam*,
  No. 00-CR. 1184 (RJH), 2010 WL 2788168 (S.D.N.Y. July 13, 2010) ............... 13

*United States v. Singh*,
  No. 2:14-cr-00648-CAS-9, 2017 WL 3701448 (C.D. Cal. Aug. 17,
  2017) .............................................................................................................. 11

*United States v. Woodruff*,
  50 F.3d 673 (9th Cir. 1995) .......................................................................... 14

DEFENDANT PULIER'S REPLY IN SUPPORT OF MOTION FOR A BILL OF PARTICULARS

1  | **I.   INTRODUCTION**
2  |
3  |
4  |
5  |
6  |
7  |
8  |
9  |
10 |
11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

**I.   INTRODUCTION**

The Government's Opposition does not meaningfully contest the essential facts that illustrate why a bill of particulars is necessary.  The Government previously alleged a criminal conspiracy in specific detail in the Information it filed against Keith Hunter and in its plea agreement with Hunter, its key cooperating witness.  These allegations were based on Hunter's FD-302 and statement to Australian Police ("Hunter Police Statement"), which alleged a specific bribery scheme as follows:

(collectively, the "September 2013 Allegations").  Now, after having been shown in a pre-indictment presentation that Hunter's statements were false, the Government has unfairly omitted basic information concerning its theory of the case from its Indictment against Mr. Pulier, including whether an earnout was even discussed at the September 2013 Los Angeles meeting.

To get around the lack of basic information in the Indictment, the Government argues that discovery informs Mr. Pulier of its factual theory of the case with "particularity."  ECF No. 51 ("Opp.") at 4.  The Government's Opposition, however, illustrates why discovery does not do so.  It states that according to discovery, CSC did not propose an earnout for the ServiceMesh/CSC deal *until October 2013*, a conclusion that proves the falsity of Hunter's statements and the Hunter Information.  Opp. at 4-5.  Yet, the Opposition's summary of discovery also relies on Hunter's FD-302 and Police Statement, the discovery that formed the basis for the different conspiracy alleged in the Hunter Information.  Opp. at 3, 6 (referencing Hunter's

DEFENDANT PULIER'S REPLY IN SUPPORT OF MOTION FOR A BILL OF PARTICULARS

FD-302 and Police Statement).  Hunter's statements falsely claimed that Hunter, Waldron, and Mr. Pulier met in Los Angeles in September 2013 to discuss a bribery conspiracy to inflate the earnout based on Harte's bribe chart.  But Hunter falsely claimed this meeting occurred in ***September 2013, before an earnout existed***.  Mr. Pulier is left to guess what the Government's theory of the case is.

The Indictment does not clarify these issues.  It is silent concerning Harte's involvement in the conspiracy and the phony bribe chart.  It also skirts the issue of whether an earnout was discussed at the alleged September 2013 Los Angeles meeting.  Instead, it only asserts that Hunter, Waldron, and Mr. Pulier discussed compensating Hunter and Waldron in exchange for "assistance."  Indictment ¶ 23.  A general offer to compensate someone, however, is not a criminal agreement concerning the earnout, especially because an earnout did not exist at the time of the meeting.  To prepare for trial and avoid surprise, Mr. Pulier must understand how this alleged meeting was furthered into a criminal agreement concerning the earnout. Neither the Indictment nor discovery answers this question.

Mr. Pulier's request for a bill of particulars is fundamentally different than the cases cited in the Opposition.  Unlike other bill of particulars cases, Mr. Pulier is not seeking a preview of the evidence the Government will present at trial.  Instead, the Hunter Information and plea agreement alleged a very specific conspiracy.  This conspiracy was ██████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████  After Mr. Pulier's counsel provided evidence to the Government that this factual theory of the case was false, the Government retreated to a vague Indictment that is silent on these central facts and leaves defense counsel guessing as to the Government's fundamental factual theory of the conspiracy.  The Opposition also fails to address the unique problem faced by defense counsel here— that the discovery the Government claims should inform the defense is the discovery

2

the Government had when it made the false specific conspiracy allegations in the Hunter Information.

The Government has retreated to a vague indictment to preserve flexibility as to what purported conspiracy the Government will allege at trial.  Without a bill of particulars, Mr. Pulier will have no idea before he hears the Government's opening statement whether the Government will allege whether Harte was part of the conspiracy, whether the earnout was discussed in September, and whether the government will disavow the fabricated bribe chart that Hunter alleges.  Mr. Pulier must understand what conspiracy he is alleged to have committed so he can prepare for trial and avoid surprise at trial.

## II.    ARGUMENT

### A.    The Governing Legal Standard Supports Mr. Pulier's Request For a Bill of Particulars.

The Opposition acknowledges two fundamental principles of law governing motions for bills of particulars.  Both of these principles support requiring a bill of particulars here.

*First*, the Government and Mr. Pulier agree that "[c]ourts have broad discretion in deciding whether or not to grant a motion for a bill of particulars."  Opp. at 13.

*Second*, the Government and Mr. Pulier agree that a bill of particulars serves three purposes:  (1) "to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial"; (2) "to avoid or minimize the danger of surprise at the time of trial"; and (3) to enable him to plead [double jeopardy in a later] prosecution for the same offense . . . ."  ECF No. 39 ("Pulier Mot.") at 11-12 (citing *United States v. Ayers*, 942 F.2d 1468, 1483 (9th Cir. 1991)); Opp. at 13 (stating the same case for the same proposition).

Therefore, if the Court concludes that any of Mr. Pulier's requests serve any of the above purposes, the Court is well within its discretion to require a bill of

3

1  particulars.  In his Motion, Mr. Pulier provided detailed explanations why he would

2  not be able to adequately prepare for trial and would suffer surprise if the Government

3  does not provide a bill of particulars.  Other than its flawed assertion that discovery

4  and the Indictment provide a roadmap to its theory of the case, the Government does

5  not contest Mr. Pulier's explanations of the harm he will suffer if he does not receive

6  the requested clarifications.  *See, e.g.*, Pulier Mot. at 15, 17, 19 (explaining why a lack

7  of particulars on the requested topics would prevent adequate trial preparation and

8  create surprise at trial).  In addition, the Government does not contest Mr. Pulier's

9  point that the Government will not suffer any prejudice or burden if it is required to

10  draft a bill of particulars.  Pulier Mot. at 21.  Nor did the Government make any

11  showing of prejudice or undue burden in its Opposition.  Because a bill of particulars

12  will impose no excessive burden on the Government, will allow Mr. Pulier to prepare

13  for trial, and will allow him to avoid surprise at trial, the Court should exercise its

14  discretion and grant Mr. Pulier's Motion.

15          **B.**    **The Discovery Produced to Date and the Indictment Highlights**

16              **Mr. Pulier's Need for a Bill of Particulars.**

17          Contrary to the Government's assertion, Opp. at 14-15, neither the Indictment

18  nor the discovery sufficiently inform Mr. Pulier of the Government's theory of the

19  case.  The lack of clarity in the Indictment and discovery stem from a central issue:

20  the Government initially based its case on the statements of a cooperator who

21  repeatedly lied about key aspects of the alleged bribery scheme.  In the Hunter

22  Information and the ███████████ in Hunter's plea agreement, the Government

23  explicitly stated that ███████████████████████████████████

24  ████████████████████  *See* Holscher Decl. Ex. 12 ("Hunter Information")[1] at 13

25  (Overt Act No. 2) ("In the [September 2013 Los Angeles] meeting, [Mr. Pulier]

26  

27  

28     [1]  All references to "Holscher Decl." refer to the Declaration of Mark Holscher in
Support of Defendant Eric Pulier's Motion for a Bill of Particulars, ECF No. 39-1.

DEFENDANT PULIER'S REPLY IN SUPPORT OF MOTION FOR A BILL OF PARTICULARS

discussed the formula devised by [Mr. Pulier] to compensate [Waldron and Hunter] through payment of a percentage of revenue obtained from CBA *creditable toward the Earnout Period*.") (emphasis added); *see also* Holscher Decl. Ex. 14 at USAO-00000669–74 ("Hunter ███████████") at USAO-00000671.

When it filed the Hunter Information, the Government possessed Hunter's FD-302 and Hunter's Police Statement, which summarized Hunter's false statements. Both state that ██████████████████████████████████ ██████████. *See, e.g.*, Holscher Decl. Ex. 10 ("Hunter FD-302") at USAO-00000442 ████████████████████████████████ ████████████████████████████████ (emphasis added); Holscher Decl. Ex. 11 ("Hunter Police Statement") ¶ 20 ████████████████████████████████.

Once Mr. Pulier's counsel exposed Hunter's false statements that there was a Los Angeles meeting in September 2013 concerning an earnout and exposed that the purported bribe chart was a fabrication, the Government reverted to conspicuously vague allegations in the Indictment against Mr. Pulier. And in its summary of discovery, the Government concedes that CSC first proposed an earnout provision in October 2013. Opp. at 4-5. Yet, despite this significant change from the allegations in the Government's prior pleadings, the Government now points Mr. Pulier to Hunter's false statements, the *same discovery* it relied on while drafting the Hunter Information. This discovery does not clarify its theory of the case.

Further, although the Government contends its discovery clarifies its theory of the case, the Government's own summary of discovery contains contradictory factual theories. Its summary states that CSC did not propose an earnout until October 2013. Opp. at 5. Yet, the summary then quotes Hunter's Police Statement. *See* Opp. at 6

DEFENDANT PULIER'S REPLY IN SUPPORT OF MOTION FOR A BILL OF PARTICULARS

(quoting Hunter Police Statement ¶¶ 16, 18).  Hunter's Police Statement provides that

███████████████████████████████████████████████████████

████████████████████.  Hunter Police Statement ¶ 20.  Also, the Government recently acknowledged in an asset forfeiture affidavit and verified complaint that Hunter's Police Statement provides that when Hunter, Waldron, and Mr. Pulier met, they discussed an earnout.[2]  The Government's discovery underscores, rather than obviates, Mr. Pulier's need for a bill of particulars.

The Government next argues that Mr. Pulier's Motion "proved that the Indictment has sufficiently apprised him of the Government's theory of the case because the motion summarized that theory on the very first page and then continuously summarized the facts underlying that theory throughout the body of the motion."  Opp. at 15.  Rather than "summariz[ing] the facts underlying" the Government's theory of the case, however, Mr. Pulier "summarized the facts underlying" *why Hunter's statements regarding the September 2013 Allegations are false*, and, as a result, why the Indictment fails to identify the Government's theory of the case.  Further, a two sentence summary in an introduction cannot capture the factual theory of a conspiracy case involving millions of pages of discovery and multiple witnesses in different countries.  This is particularly true when the

---

[2]  On September 28, 2017, the day after it issued its Indictment against Mr. Pulier, the Government submitted a sworn affidavit of an FBI agent to seize assets held by Mr. Pulier.  Holscher Decl. in Supp. of Def.'s Reply ("Holscher Reply Decl."), Ex. 1, App. and Aff. ("Aff.").  The FBI agent swore that Hunter's statement to Australian Police asserted that the alleged conspirators discussed an earnout at the September 2013 meeting.  Aff. ¶ 52 ("In March, 2016, Hunter provided a statement to the New South Wales Police Force.  Hunter stated that prior to the close of the CSC acquisition of ServiceMesh, Hunter and Waldron met with Pulier to discuss how they would be compensated *for helping ServiceMesh achieve the Earnout payment*.") (emphasis added).  The Government characterized Hunter's statement to Australian authorities in an identical fashion as recently as March 29, 2018, when it filed a verified asset forfeiture complaint to seize assets in trusts set up for the benefit of Mr. Pulier's children.  Holscher Reply Decl. Ex. 2 ¶ 55 ("In March, 2016, Hunter provided a statement to the New South Wales Police Force.  Hunter stated that prior to the close of the CSC acquisition of ServiceMesh, Hunter and Waldron met with Pulier to discuss how they would be compensated *for helping ServiceMesh achieve the Earnout payment*.") (emphasis added).

DEFENDANT PULIER'S REPLY IN SUPPORT OF MOTION FOR A BILL OF PARTICULARS

1   Government alleged a specific factual theory in prior court filings based on Hunter's

2   statements, but abandoned that theory when his statements were proven false.

3       Even putting aside the problems with the Government's discovery, this case's

4   complexity and sheer volume of documents produced warrant a bill of particulars.

5   *See, e.g.*, *United States v. Chen*, No. C 05-375, 2006 WL 3898177, at *3 (N.D. Cal.

6   Nov. 9, 2006) ("[G]iven the breadth and complexity of this case, requiring defendants

7   to search through a mountain of discovery does not satisfy the obligation to

8   adequately advise defendant of the charges against him."). The Government has

9   produced "thirteen discrete productions of materials, totaling approximately 2 million

10  pages." Opp. at 3. Contrary to the Government's assertion, *see* Opp. at 21, providing

11  discovery in a searchable format does not obviate the need for a bill of particulars

12  where, as here, there are over 2 million pages of discovery. *Cf. Chen*, 2006 WL

13  3898177, at *3 (requiring the Government to provide a bill of particulars despite that

14  "much but not all of the [150,000 pages of] document[ary evidence] are searchable by

15  defendant's name").

16      **C.    Mr. Pulier Needs a Bill of Particulars to Understand the**

17          **Government's Factual Theory Regarding How the Bribery**

18          **Conspiracy was Furthered.**

19      Mr. Pulier requests basic information concerning the Government's factual

20  theory of the bribery scheme and seeks to understand whether the Government will

21  present a theory of the case based on the conspiracy Hunter alleged or based on a

22  different set of facts. The Government incorrectly asserts that Mr. Pulier is

23  demanding a complete "who, what, when, where and how" of the Indictment. Opp. at

24  16. Indeed, in the case the Government cites to support this argument, *United States

25  v. Giese*, the defendants "asked for a wide range of information, such as lists of

26  conspiratorial acts performed by each person named in the indictment and of ***each

27  overt act and object of the conspiracy***." 597 F.2d 1170, 1180 (9th Cir. 1979)

28

(emphasis added).  Mr. Pulier has not requested, and does not seek, "each overt act and object of the conspiracy."  In contrast, Mr. Pulier only requests that the Government identify its basic factual theory regarding the alleged bribery scheme.

       1.    <u>The September 2013 meeting</u>

     The Government argues that it need not identify whether the alleged conspirators discussed an earnout at a September 2013 meeting because Mr. Pulier's "numerous cites to the record [in his Motion shows that he] is well versed in not only . . . the government's theory of the bribery scheme but in the facts surrounding the September 2013 meeting."  Opp. at 17.  However, Mr. Pulier's "numerous cites" are references to Hunter's statements alleging that ███████████████████ ███████████████████████████████, *see* Pulier Mot. at 7 (citing Hunter FD-302 at USAO-00000442), and to the Government's prior court filings and plea agreement ██████████████████.  *See* Pulier Mot. at 8-9 (citing Hunter Information at 13 (Overt Act No. 2) and Hunter ████████████ at USAO-00000670–71).

     But the Opposition's summary of discovery states that ***no earnout existed until October 2013***, a conclusion that makes Hunter's statements false.  *See* Opp. at 4-5 (providing that CSC first proposed an earnout in October 2013).  The Opposition compounds the confusion by also stating that the Government's theory of the case encompasses excerpts from Hunter's statements that assert an earnout was discussed at the September 2013 meeting.  *See, e.g.*, Opp. at 6 (quoting Hunter Police Statement ¶ 18, which, with ¶ 20, asserts an earnout was discussed at the September 2013 meeting).  After providing this contradictory factual background, the Opposition refuses to identify whether or not the conspirators discussed an earnout at the September 2013 meeting.  Mr. Pulier must guess whether the Government has a factual theory regarding the September 2013 meeting, let alone what it is.

     Citing *United States v. Feil*, No. CR 09-00863 JSW, 2010 WL 1525263, *4 (N.D. Cal. Apr. 15, 2010), the Government argues that Mr. Pulier is not entitled to

1    "details about how, when, and where the bribery scheme originated." Opp. at 18. But

2    Mr. Pulier seeks information regarding how the alleged bribery scheme was

3    *furthered*, not formed. Indeed, the Indictment alleges that the conspiracy began prior

4    to the September 2013 meeting. *See* Indictment ¶¶ 14-21 (describing acts beginning

5    in 2008 that were part of the "manner and means of the conspiracy"); *see also*

6    Indictment at 20 (Overt Act No. 1) (stating that Mr. Pulier committed the first overt

7    act in furtherance of the alleged conspiracy on September 5, 2013, before the

8    September meeting in Los Angeles occurred). Accordingly, whether Mr. Pulier

9    discussed an earnout at a September 2013 meeting identifies how Mr. Pulier furthered

10   the conspiracy. In addition, to the extent the Government intends to rely on Hunter's

11   statements that he and Harte discussed the bribery scheme at an early-September 2013

12   meeting in Australia, whether Hunter discussed an earnout at a second September

13   2013 meeting identifies how Hunter furthered the conspiracy.

14        Mr. Pulier needs a bill of particulars to determine whether the Government can

15   adequately allege a conspiracy concerning the earnout. Again, the Government now

16   tacitly acknowledges that no earnout existed until October 2013. *See* Opp. at 4-5.

17   Accordingly, the September 2013 event that the Indictment describes—namely, a

18   discussion of "a formula under which [Mr. Pulier] would compensate [Waldron and

19   Hunter] a percentage of funds received in any sale of ServiceMesh to CSC for [their]

20   assistance . . . to ServiceMesh and [Mr. Pulier]," Indictment at 21 (Overt Act No. 3)—

21   is not a criminal conspiracy to commit fraud concerning the earnout. It is not illegal

22   to discuss potential payments to others. If, in September 2013, CSC's acquisition of

23   ServiceMesh remained a fixed-price deal, then any "assistance" by Waldron and

24   Hunter would not affect any funds received by ServiceMesh. The Indictment provides

25   no information about how the conspiracy was furthered such that the agreement to

26   compensate Waldron and Hunter became a *criminal* agreement concerning the

27

28

                                              9

1  earnout  The answer to this question is part of the Government's factual theory of the

2  case and must be provided.

3                  2.      <u>Harte's involvement in the alleged scheme</u>

4          Because Mr. Pulier is entitled to know the identity and actions of known

5  conspirators, the Government must identify its factual theory regarding whether and

6  how Harte allegedly contributed to the bribery scheme.[3]  The Opposition incorrectly

7  asserts that "the Ninth Circuit has specifically held that [the identity of unnamed co-

8  conspirators] 'do[es] not warrant a bill of particulars.'"  Opp. at 19 (quoting *United*

9  *States v. DiCesare*, 765 F.2d 890, 897-98 (9th Cir. 1985)).  In *DiCesare*, however, the

10  Ninth Circuit rejected defendants' request "to obtain the names of any ***unknown***

11  coconspirators."  *Id.* at 897 (emphasis added).  Further, contrary to the Government's

12  assertion, the Ninth Circuit has not established a blanket rule that defendants are never

13  entitled to the identities of alleged co-conspirators.  Instead, the Ninth Circuit held that

14  the district court did not abuse its discretion in denying defendants' request, and noted

15  that defendants did not "specif[y] any prejudice or surprise resulting from the denial

16  of the bill."  *Id.* at 898.  As explained in Section II.A., *supra*, trial courts have broad

17  discretion when deciding whether to order a bill of particulars.

18          The Government's reliance on *United States v. Burt*, 765 F.2d 1364 (9th Cir.

19  1985) is similarly misplaced.  Like the defendants in *DiCesare*, the defendant in *Burt*

20  "support[ed] his arguments . . . with only conclusory statements . . . [and] fail[ed] to

21  demonstrate surprise, prejudice, or an increased risk of double jeopardy stemming

22  from the alleged shortcomings of the indictment."  *Id.* at 1367.  Accordingly, the

23  Ninth Circuit held that "[i]n the ***absence of surprise or prejudice***, there is no absolute

---

25  [3]  The Government must provide the names of known unindicted co-conspirators if a
26  court determines that doing so will "prevent unfair surprise" and "allow defendants
  to prepare for trial."  *United States v. Nachamie*, 91 F. Supp. 2d 565, 573
27  (S.D.N.Y. 2000).  The Government must also identify the "manner in which [the
  known co-conspirator] . . . contributed to the charged conspiracy, and the times and
28  places of [his] participation."  *Feil*, 2010 WL 1525263, at *3.

requirement that the government name [known co-conspirators]." *Id.* (emphasis added). Similarly, in *United States v Brown*, No. 2:17-cr-00047(A)-CAS, 2018 WL 739268 (C.D. Cal. Feb. 5, 2018), the defendant supported his argument that he was entitled to the identities of every known co-conspirator—listing the initials of at least fourteen known co-conspirators included in the indictment—with one conclusory sentence. *See* Motion to Compel Disclosure of Alleged Co-Conspirators, No. 2:17-cr-00047(A)-CAS (C.D. Cal. Jan. 22, 2018), ECF No. 117 at 5. In denying the defendant's request, the court, citing *DiCesare* and *Burt*, noted that unidentified co-conspirators need not always be identified "*and* [that] defendant fail[ed] to demonstrate" surprise, prejudice, or increased risk of double jeopardy. *Brown*, 2018 WL 739268, at *7 (emphasis added).[4]

Indeed, in determining whether to grant a motion for a bill of particulars, a court must determine whether the denial of the requested information will result in surprise and prejudice at trial. *See* Section I.A., *supra*. In his Motion, Mr. Pulier explained that he will suffer surprise and prejudice if the Government fails to identify whether and how Harte contributed to the bribery scheme and detailed exactly ***why***. *See* Pulier Mot. at 17.[5] Specifically, knowing this information will significantly alter how Mr. Pulier prepares his defense and allocates his limited trial preparation resources. As CBA's Chief Information Officer from roughly 2006 to 2014, Harte controlled CBA's IT strategy, drove CBA's relationship with ServiceMesh and Mr. Pulier, supervised Hunter and Waldron, and authorized the execution of the McAfee earnout deal, which generated over $5 million in revenue. If the Government's factual theory of the case does *not* include Harte as a co-conspirator,

---

[4]   Likewise, in *United States v. Singh*, No. 2:14-cr-00648-CAS-9, 2017 WL 3701448 (C.D. Cal. Aug. 17, 2017), although the court denied the defendant's request for the names of known and unknown co-conspirators, the court did not identify any surprise or prejudice that the defendant would suffer if the government did not identify the known co-conspirators. *Id.* at *12.

[5]   The Government did not contest this explanation in its Opposition.

then his approval of the McAfee earnout deal is exculpatory evidence that the deal was a legitimate contract and not procured through bribery.  Mr. Pulier will then need to identify and develop all evidence supporting this defense.  But if the Government's factual theory of the case *includes* Harte as a co-conspirator, then Mr. Pulier must devote a significant amount of his trial preparation to proving that Harte's involvement in the scheme is impossible.

Unlike the defendant in *Brown*, Mr. Pulier's request is not wide-ranging.  This request seeks the Government's basic factual theory of the case.  Indeed, throughout its Opposition, the Government states that its discovery informs Mr. Pulier of its theory of the case.  *See, e.g.*, Opp. at 4 ("The Indictment and discovery provided to defendant allege and demonstrate with particularity the time, place and manner of the fraud and bribery scheme with which defendant is charged.").  And the Government's discovery includes Hunter's statements—including Hunter's Police Statement quoted in the Government's Opposition—providing ███████████████████████ ██████████.  *See* Hunter Police Statement ¶ 17; *see also* Hunter FD-302 at USAO-00000442.  Did Harte plan and direct the conspiracy, receive bribes, and supervise the execution of the CBA contracts while knowing they were the result of bribes?  A conspiracy masterminded and directed by Harte and a conspiracy masterminded and directed by Mr. Pulier are two different factual theories of the case and require different trial preparation strategies and strategies at trial.  Harte's possible involvement pervades the entire case and, consequently, significantly affects multiple aspects of Mr. Pulier's defense strategy.

### 3.   The fabricated bribe chart

In the same way that Harte's possible involvement pervades the entire case, so, too, does Harte's alleged bribe chart.  To prepare adequately for trial and avoid prejudice and surprise, Mr. Pulier must know whether the Government is disavowing

DEFENDANT PULIER'S REPLY IN SUPPORT OF MOTION FOR A BILL OF PARTICULARS

the central allegation of Hunter's prior statements regarding how the conspirators used the bribe chart to further the conspiracy.

The Government argues that it need not identify whether and how the conspirators used the alleged bribe chart because discovery provides this information. This argument, however, is meritless for the same reasons discussed in Section II.B., *supra*.  In its summary of discovery, the Opposition tacitly acknowledges that no earnout existed until October 2013.  Opp. at 4-5.  Yet, the Opposition references Hunter's Police Statement and FD-302, which provide that Harte drew a bribe chart based on the earnout and instructed Hunter to show the bribe chart to Mr. Pulier in September 2013—before the earnout existed.  Opp. at 3, 6.  Indeed, the discovery only obfuscates the Government's theory of the case. [6]

The Government further argues that its discovery obviates the need for information on whether and how the conspirators used the bribe chart because its discovery is organized and easily searchable.  *Id.* at 21.  But this argument, too, is meritless.  Mr. Pulier is unable to search for other documents related to the bribe chart, because Hunter is the only percipient witness who alleges that one exists.

By refusing to identify whether and how the alleged conspirators used the bribe chart, the Government forces Mr. Pulier to guess which excerpts from Hunter's statements—riddled with perjured testimony—the Government believes is true and intends to use as its factual theory of the case.  A conspiracy prompted and guided by Harte's alleged diagram detailing the bribery scheme, and a conspiracy prompted and

---

[6] For this precise reason, this is *not* a case where "[f]ull discovery . . . obviates the need for a bill of particulars."  Opp. at 20 (quoting *Giese*, 597 F.2d at 1180).  Contrary to the Government's assertion, there is no blanket rule that "full discovery" obviates the need for a bill of particulars.  As an example, as both Mr. Pulier and the Government note, numerous cases provide that voluminous discovery will *necessitate* a bill of particulars.  *Chen*, 2006 WL 3898177, at *3; *United States v. Rajaratnam*, No. 00-CR. 1184 (RJH), 2010 WL 2788168, at *2 (S.D.N.Y. July 13, 2010).  Where, as here, discovery on the relevant topic is replete with contradictory statements and perjured statements, discovery cannot obviate the need for a bill of particulars.

13

guided by a completely different source are two distinct factual theories. Allowing the Government to reveal at trial on which of these two factual theories it bases its case will result in both surprise and prejudice.

**D.    Mr. Pulier Needs a Bill of Particulars to Understand the Government's Factual Theory Regarding to Whom Mr. Pulier Offered or Paid Bribes.**

Mr. Pulier cannot defend against bribery charges without knowing whom he allegedly bribed or offered to bribe. As an initial matter, to the extent the Government argues Mr. Pulier is not entitled to information regarding unindicted known co-conspirators as a matter of law, its argument fails for the same reason discussed in Section II.B., *supra*. Again, there is no blanket Ninth Circuit rule that defendants are never entitled to the identities of alleged co-conspirators. Rather, the proper test in determining whether to order a bill of particulars on this topic is whether the denial of the information will result in surprise and prejudice at trial. *See* Section I.A., *supra*.

Because the Government apparently plans to assert that Mr. Pulier bribed "others," Indictment ¶ 22, the Government must identify those "others" so that Mr. Pulier will not suffer any surprise or prejudice at trial.[7] The Government argues that the Indictment "references payments to others" and therefore contains enough detail. Opp. at 23 (citing Indictment ¶ 55 (Overt Acts 36, 44)). While the Indictment

---

[7] The Opposition's reliance on *United States v. Woodruff*, 50 F.3d 673, 676 (9th Cir. 1995) for the proposition that "a 'bare bones' information . . . is quite common and entirely permissible" is misleading. *See* Opp. at 23. The Ninth Circuit limited *Woodruff's* discussion and holding to cases involving the Hobbs Act. *Woodruff*, 50 F.3d at 676 ("These and other Ninth Circuit cases *delineating the broad reach of the Hobbs Act* weigh heavily against appellee's claim that the indictment was facially insufficient.") (emphasis added); *see also id.* at 677 ("*In light of the statute's adjudicated broad reach*, we conclude the indictment at issue sufficiently informed the accused of the specific offenses with which he was charged.") (emphasis added). The Ninth Circuit later confirmed *Woodruff's* limited holding. *See United States v. Fernandez*, 388 F.3d 1199, 1218 (9th Cir. 2004) ("We have previously held, *in the context of Hobbs Act prosecutions*, that an indictment need not set forth facts alleging how interstate commerce was affected, nor otherwise state any theory of interstate impact.") (emphasis added).

14

DEFENDANT PULIER'S REPLY IN SUPPORT OF MOTION FOR A BILL OF PARTICULARS

"references payments" to two individuals, it leaves open the possibility that the Government will later claim that Mr. Pulier bribed "others" besides them.

If the Court does not grant a bill of particulars on this issue, the Government can create surprise at trial by alleging that additional improper payments or promises of payment to "others" took place.  The Government cannot require Mr. Pulier to conduct detailed factual research into every possible person with whom he had business dealings who could have possibly influenced an earnout contract.  Mr. Pulier is not asking the Government to provide all evidence supporting each claim it will raise at trial.  Instead, he merely asks that the Government define the universe of alleged payments or promises of payment that it will litigate at trial so that he can adequately search through the discovery in this case to prepare his defense.  The Government must provide sufficient detail regarding these alleged bribes to "others" so that Mr. Pulier may prepare adequately for trial and avoid prejudice and surprise.

## III.   CONCLUSION

For the foregoing reasons, Mr. Pulier respectfully requests that the Court grant his Motion for a Bill of Particulars.

DATED:  June 1, 2018                        Respectfully submitted,

                                            */s/ Mark Holscher*
                                            _____
                                            Mark Holscher
                                            Jeff Sinek
                                            KIRKLAND & ELLIS LLP

                                            Nathan J. Hochman
                                            MORGAN, LEWIS & BOCKIUS LLP

                                            *Attorneys for Defendant*
                                            *Eric Pulier*

DEFENDANT PULIER'S REPLY IN SUPPORT OF MOTION FOR A BILL OF PARTICULARS