NICOLA T. HANNA
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
PAUL G. STERN (Cal. Bar No. 162734)
Assistant United States Attorney
Senior Litigation Counsel, Major Frauds Section
EDDIE A. JAUREGUI (Cal. Bar No. 297986)
JOSEPH B. WOODRING (Cal. Bar. No. 272940)
Assistant United States Attorneys
    Major Frauds/General Crimes Sections
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0715/4849/0284
    Facsimile: (213) 894-6269
    E-mail: paul.stern@usdoj.gov
             eddie.jauregui@usdoj.gov
             joseph.woodring@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 17-599-AB |
|---|---|
| Plaintiff, | **GOVERNMENT'S REPLY IN SUPPORT OF EX PARTE APPLICATION FOR TRIAL CONTINUANCE** |
| v. | |
| ERIC PULIER and JON WALDRON, | Hearing Date: July 6, 2018 |
| Defendants. | Hearing Time: 1:30 p.m. |
| | Location: Courtroom of the Hon. André Birotte Jr. |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Paul G. Stern, Eddie A. Jauregui, and Joseph B. Woodring, hereby files its reply brief in support of its ex parte application for a trial continuance.

This reply is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: July 5, 2018    Respectfully submitted,

NICOLA T. HANNA
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division


      /s/
PAUL G. STERN
EDDIE A. JAUREGUI
JOSEPH B. WOODRING
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

A continuance of the trial date in this case is necessary and serves the ends of justice.  Trial is set for September 11, 2018, approximately two months from the date of this filing.  The 42-page indictment charges defendant with conspiring to commit securities and wire fraud, the substantive crimes of securities and wire fraud, bribery, obstruction, and tax crimes.  The discovery consists of over two million pages.  With several weeks to go before trial, both parties contemplate taking multiple Rule 15 depositions in four different countries.  To the government's knowledge, defendant also plans to: (1) seek an evidentiary hearing to prove up his claims of prosecutorial misconduct arising from the government's breach of attorney-client privilege; (2) move to preclude the government from calling a cooperator to testify at trial on the ground he is a known perjurer; and (3) and to seek court-ordered immunity for a defense witness.  Defendant previously indicated that he may file a motion pertaining to the "misconduct of CSC" and the government expects he will do so.  Currently pending before the Court are defendant's motion for a bill of particulars and his requests for early-return Rule 17(c) subpoenas, which likely will give rise to still other motions, including motions to quash.  At the same time, defense counsel has asked the government to consider a pre-trial disposition of the case.

As explained previously, the government replaced the entire prosecution team in this case only a few weeks ago, out of an abundance of caution and to ensure that prosecution of this matter by the previous trial team could not fairly be alleged to constitute an

impairment of defendant's Constitutional rights. The newly assigned AUSAs have been walled off from the prior prosecution team (meaning they cannot speak with the former AUSAs about any substantive matters pertaining to this case) and have been granted access to the case files and discovery on a rolling basis, after a third set of prosecutors has cleared them to review it. In addition, as defendant knows, the lead FBI case agent will soon begin a rotation as a Special Assistant United States Attorney and will be replaced on the prosecution team by a new agent. A different set of prosecutors continues to investigate the alleged violations of the attorney-client privilege.

It is for all of these reasons that the government is seeking a reasonable trial continuance, and these same considerations appear to have persuaded defendant that it is in his interest to compel the government to proceed to trial when it cannot possibly be prepared to do so. The ends of justice are served by granting the requested continuance and allowing the trial to proceed in a reasonable and orderly manner.

**II. STATEMENT OF FACTS**

Defendant's opposition provides a lengthy but one-sided and incomplete recitation of the facts pertaining to the alleged violation of the attorney-client privilege, which is not properly before the Court at this time. While the government will address this complex and fact-intensive issue in full at the appropriate time, and dissents from much of the defense's rendition of the facts, it addresses here only the facts relevant to its request for a continuance.

As the defendant knows, the government's decision to replace the trial team in this case resulted from the inadvertent exposure of the former AUSAs to potentially privileged information found in a 140-page PDF. Defendant brought this issue to the attention of the United States Attorney on March 15, 2018, and the government responded within two weeks, noting that it would investigate the alleged violations. That is precisely what happened.

In the two and a half month period between March 15, 2018 and June 4, 2018, the United States Attorney's Office undertook a diligent investigation into this matter, enlisting the assistance of senior Assistant United States Attorneys with no ties to the case. While the investigation is ongoing, the United States Attorney's Office determined that in order to avoid the prospect of a Sixth Amendment violation and to ensure the protection of defendant's rights, it would replace the entire prosecution team out of an abundance of caution. This was a specific remedy requested by the defense, to which the government assented. (See Def's Ex. 30.)

In the time period since, the new prosecution team has worked diligently to prepare for trial by reviewing the pleadings, discovery, and correspondence with counsel, meeting with case agents, conferring with defense counsel, conducting legal research, and responding to defendant's requests for information, as well as defense filings. Although the new trial team maintains a full docket of other case work, each prosecutor has devoted substantial time to this case first and foremost.

**III. ARGUMENT**

The government's request for a trial continuance rests on three grounds, although defendant largely ignores two of them. First, that

3

a failure to grant the requested continuance would likely make a continuation of the trial impossible or result in a miscarriage of justice. Second, that the case is sufficiently unusual or complex to warrant an additional continuance of approximately five months. And third, that should the Court find that the case is not sufficiently unusual or complex, denial of a continuance would deny counsel for the government reasonable time necessary for effective pre-trial preparation, notwithstanding the prosecutors' diligence. The defense focuses their arguments almost entirely on the alleged lack of government diligence, but, as explained below, that is both factually and legally misguided.

### A. The Government Acted Diligently In Responding to Allegations of Breach of the Attorney-Client Privilege

At bottom, defendant's objection to the government's request for a five month continuance and for proper findings of excludable time is premised on a claim that the Court lacks authority to exclude time under the "ends of justice" provision of the Speedy Trial Act, where "the continuance is due to the government's lack of diligence." (Def't Opp. at 1, citing 18 U.S.C. § 3161(h)(7)(C).)

The fundamental problem with defendant's argument is that the limitation imposed by § 3161(h)(7)(C) pertains specifically to a "lack of diligent preparation" in proceeding to trial, not a general and amorphous "lack of diligence." 18 U.S.C. § 3161(h)(7)(C) (emphasis added). Significantly, the lack of diligence misleadingly alleged by defendant has nothing to do with a "lack of diligent preparation" for trial, because there is nothing in the record to suggest that either former AUSAs Cazares and Paetty or current AUSAs Stern, Jauregui, and Woodring failed to exercise due diligence in

their pre-trial preparation activities, e.g., by not locating witnesses, not providing discovery, not filing motions or making proper disclosures, and so forth. Indeed, the very case cited by defendant, United States v. McIntosh, No. 2015-0027, 2016 WL 4581407 (D.V.I. Aug. 31, 2016), makes clear that the limitation of the 'ends of justice' provision under section 3161(h)(7)(C)(C) must pertain to "lack of diligent preparation" of a party in getting ready for trial, not with a general allegation of governmental negligence or lack of diligence in handling privileged information, as defendant has inaccurately asserted in his opposition. See McIntosh, 2016 WL 4581407 at *3 (denying government's motion to continue because government's actions reflect "lack of diligent preparation") (emphasis added). Because defendant has not even alleged governmental lack of diligence in its pre-trial preparation, his claim that the "ends of justice" exclusion is inapplicable is meritless.

Apart from his misreading of the provisions of section 3161(h)(7)(C), the government vigorously contests that it has exercised a lack of diligence in attempting to address the breach of defendant's attorney-client privilege arising from the production of documents pertinent to the two email search warrants. To be sure, owing to an inadvertent, and highly regrettable, mistake in the taint review process, certain email materials containing the contents of apparently privileged communication were cursorily disclosed to the trial AUSAs.[1] When this matter was brought to the attention of the

---

[1] It is the current trial counsels' understanding that the e-mail communications at issue were e-mails defendant addressed to himself, not to his counsel at Kirkland & Ellis.

5

1  U.S. Attorney's Office in March 2018, the Office engaged in an
2  extensive colloquy with defendant's counsel on the matter and
3  initiated an intensive review of its own internal procedures to
4  determine the circumstances under which this alleged breach occurred.
5       While the Office did not conclude that the exposure of a limited
6  number of attorney-client communications tainted the trial AUSAs or
7  constituted a substantive or prejudicial intrusion upon defendant's
8  rights, it nevertheless agreed to a replacement of the entire
9  prosecution team at defense counsel's request in order to avoid any
10 future intrusion upon defendant's rights and to protect the integrity
11 of the trial process going forward.  As any current or former
12 prosecutor (and indeed any federal criminal practitioner) can
13 appreciate, this extraordinary decision required extensive
14 deliberation and the careful exercise of due diligence on the part of
15 the government.
16      One of the results of attempting to remedy the consequences of
17 the government's inadvertent mistake in the handling of a limited
18 amount of privileged material is that the new trial team will need a
19 reasonable amount of additional time to prepare for trial.  Under
20 these circumstances, explained further below, there is no authority
21 either in the Speedy Trial Act, or in the case law that defendant has
22 cited, that precludes the court from applying the "ends of justice"
23 exception to exclude the time necessary to enable new government
24 counsel to be reasonably prepared to proceed to trial, taking into
25 account the exercise of due diligence.  From this perspective,
26 defendant's insistence on asserting his Speedy Trial Rights in the
27 face of the government's accession to his request to replace the
28 previous trial team appears to be little more than an exercise in

gamesmanship and an effort to extract a strategic advantage from an unfortunate and unforeseen circumstance. It should not be countenanced by this Court.

**B. Denial of the Government's Request for a Continuance Would Make Continuation of Trial Impossible or Result in a Miscarriage of Justice**

The government's decision to replace the entire prosecution team in this case was not taken lightly. As every attorney appearing in this case understands, such a step is rare and even drastic, particularly where the government is still investigating the alleged violation and no showing of prejudice has been made. Nevertheless, the government made this decision deliberately in order to protect defendant's rights and the integrity of the case itself. In other words, it did the right thing.

Forcing the new prosecution team to trial on the current date would punish the government for doing so. While the new trial team has moved quickly to learn the facts and history of the case, it would be virtually impossible to proceed to trial on the current trial date, given the significant volume of discovery in the case, with which the trial team is practically unfamiliar; the limitations placed on the trial team (e.g., the "wall" between the new and former prosecutors); the need to respond to impending motions, which will present complex factual and legal issues; the preparation and defense of possible depositions in foreign jurisdictions; and the fact that new agents are being assigned to the matter.

Forcing the government to trial on the current trial date would likewise result in a miscarriage of justice given the imbalance of knowledge between the parties. Defendant has been represented by the same counsel for years. It is clear from the transcript of the first

7

status conference alone that counsel is well-versed in the facts of the case. Indeed, counsel even previewed the defendant's myriad defenses for the Court. By contrast, government counsel, although acting diligently, is new to this matter and will require additional time to fully understand the facts and prepare for trial.

### C. The Case Presents Sufficiently Unusual and Complex Questions of Fact and Law to Merit a Continuance

It is undisputed that this is a complex case and that the complexity of the case justified a trial continuance of nine months from December 2017 to September 2018. (Def.'s Opp. at 13-15.) What is in dispute now is whether a further continuance is necessary on this ground. It is. As the government noted in its initial application, most, if not all, of the considerations that warranted the initial ninth-month continuance remain operative today: at the status conference in October 2017, the defense expressed to the Court that it planned to take Rule 15 depositions, file "substantive motions" concerning the violations of the attorney-client privilege, "develop a record with respect to the misconduct of CSC," seek to preclude testimony from a government witness, and seek immunity for a defense witness, among other things. (See 10/27/2017 Hr'g Tr. at 14-17.) As of today, no substantial steps have been taken to address any of these matters relating to the complexity of the case, although it appears the defense still intends to pursue many of the matters identified at the hearing.[2]

---

[2] For example, on June 25, 2018, defense counsel forwarded stipulations relating to the taking of 12 depositions and seven letters rogatory to the government and explained that "due to the impending trial date, we would like to get the attached stipulation on file and move forward with the depositions as quickly as

8

These facts reflecting the still-current complexity of the case alone warrant an additional continuance. Moreover, contrary to defendant's assertion, the case has, in fact, become more complex, as is evident from defendant's opposition brief. Defendant has alleged a new violation of his constitutional rights – one that caused the government to investigate the matter and replace the initial trial team out of an abundance of caution. Based on defense counsel's representations, the government expects defendant to file a prosecutorial misconduct motion, which will be extremely fact intensive (as reflected by the 34 attachments to defense counsel's declaration) and likely require substantial briefing and an evidentiary hearing. Indeed, the litigation of this complicated issue will result in a mini-trial in its own right. There is no likely scenario in which these issues can be fully fleshed out over the course of the next two months, while at the same time addressing all of the other factually and legally complex issues raised by the defense and providing the parties adequate time to prepare for a six to eight week trial.

**D. Failure to Grant Continuance Would Unreasonably Deny Counsel for the Government Reasonable Time for Effective Preparation, Taking Into Account Exercise of Due Diligence**

Finally, for the same reasons outlined above, a failure to grant the government's request for a trial continuance would deny government counsel reasonable time for effective preparation, taking into account the exercise of due diligence. Trials are supposed to be about a search for the truth; that function would be severely impaired if the Court denied the government's request for a trial

---

possible." (See E-mail from J. Sinek to P. Stern, et al., dated June 25, 2018, attached hereto as Ex. 1.)

9

continuance and forced the newly assigned prosecution team to trial on September 11. As the defense undoubtedly understands, it would be impossible under the circumstances outlined above for the newly assigned AUSAs to digest the millions pages of discovery in this case, understand the history of the case and the investigation, respond adequately to defense motions, prepare and defend international depositions, prepare witnesses for trial, and devise a trial strategy within a two-month period. Indeed, defendant does not contend anywhere in his brief that the new trial team will be afforded "the reasonable time necessary for effective preparation," one of the conditions that mandates a continuance under § 3161(h)(7)(B)(iv).

**IV. CONCLUSION**

For all the foregoing reasons, the Court should grant the government's request for a continuance and make the necessary findings of excludable time under the Speedy Trial Act as set forth in the government's proposed order.